IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Howard Brebberman,                     Case No. 3:21 CV 1881

          Plaintiff,     MEMORANDUM OPINION
                                       GRANTING SUMMARY JUDGMENT
   -vs-
                                       JUDGE JACK ZOUHARY

City of Maumee, Ohio,

          Defendant.

### INTRODUCTION

Plaintiff Howard Brebberman worked as Commissioner of Public Service for Defendant City of Maumee. In May 2020, the City terminated Brebberman. He then filed this suit for age discrimination in violation of Ohio Revised Code ("R.C.") Section 4112.02 (Doc. 1). The City now moves for summary judgment under Federal Civil Rule 56(a) (Doc. 26), which is appropriate only where no genuine issue of material fact exists.

### FACTS

In September 1996, the City hired Brebberman as an engineer in the Public Service department (Doc. 25-3). Brebberman, who holds an associate degree in architectural technology and a bachelor degree in industrial technology, was promoted in May 2012 to "Commissioner" of Public Service (*id.*). The position description was to "provide[] administrative, engineering and technical support to the City divisions of Construction, Operations and Natural Resources" (Doc. 23-6). His duties included maintenance and upkeep of public buildings and public grounds, above-

ground infrastructure, and trees in the public right of way (*id.* 23-6). Brebberman supervised day-to-day operations of the "service working group" (*id.*). He had no performance-related issues while serving in this role (Doc. 28 at 4).

On March 24, 2020, the Mayor declared the City to be in a state of emergency due to the COVID-19 pandemic (Doc. 23-11). The City anticipated a significant decrease in revenue the following month -- amounting to a roughly $1.2 million dollar annual loss (Doc. 24-2). Facing these losses, the City decided to cut staff. The Mayor signed an Emergency Order the following month, calling for a reduction of the City's workforce (Doc. 23-11 at 2). The Order called for 23 positions to be eliminated in multiple divisions, including police, fire, public service, and finance (*id.*). On April 27, the City drafted letters to 18 employees, including Brebberman, notifying them of their positions being eliminated as part of a reduction in force ("RIF") (Doc. 25-1). On April 29, Brebberman met with the City Administrator, Chief of Police, Law Director, and Commissioner of Human Resources. They handed him a letter of termination (Doc. 28 at 5). Brebberman's employment with the City ended on May 10; he was 59 years old at the time (Docs. 23-13, 23 at 3).

During the spring of 2020, the City experienced a number of employee changes. Some employees voluntarily resigned or retired from their positions in response to the Emergency Order (Doc. 24-2 at ¶ 8). Of the 18 employees who received termination letters, three were ultimately terminated, some retired, others moved into open positions or were able to keep their positions as a result of negotiations between the City and their Union (Doc. 26-1 at 10).

## STANDARD

"Age discrimination claims brought under the Ohio statute are analyzed under the same standards as federal claims brought under the [ADEA]." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citation omitted). Brebberman must show, by a preponderance of the evidence, that age was the "but-for" cause of his firing. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009). This evidence can be direct or circumstantial. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). On the other hand, "[c]ircumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

When there is no direct evidence, circumstantial evidence may suffice, but only if it survives the *McDonnell Douglas* burden-shifting analysis. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To demonstrate a prima facie case, Brebberman must show he was: (1) a member of a protected group; (2) subject to an adverse employment decision; (3) qualified for the position; and (4) replaced by a person outside of his protected class. *Geiger*, 579 F.3d at 622.

If Brebberman establishes a prima facie case of age discrimination, the burden shifts to the City to provide a legitimate, non-discriminatory reason for the adverse action. *Hrdlicka v. GM LLC*, 63 F.4th 555, 567 (6th Cir. 2023). Brebberman must then establish that the proffered reason for termination is pretextual, by showing it: (1) has no basis in fact; (2) did not actually motivate the City's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Id.* at 568.

### DISCUSSION

Brebberman admits there is no direct evidence of age discrimination (Doc. 28 at 10). This Court therefore examines whether Brebberman's circumstantial evidence suffices.

Brebberman is a member of a protected class who suffered an adverse employment action (Doc. 26-1 at 9). *See Kocsis v. Multi-Care Mgmt.*, Inc., 97 F.3d 876, 886 (6th Cir. 1996) (noting that being fired constitutes an adverse employment action). Two factors remain in dispute -- (1) whether Brebberman was qualified and (2) who replaced him. On these, he claims the City eliminated his position, despite his outstanding record; and replaced him with younger employees.

***Reduction in Force***

This Court first considers whether the City terminated Brebberman as part of a RIF (Doc. 26-1 at 8). A RIF occurs when "business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). The Emergency Order, issued in response to financial losses stemming from COVID-19, called for the elimination of 23 positions in multiple divisions (Doc. 23-11 at 2). Reducing staff for such "economic reasons" clearly fits this definition. *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997).

Brebberman argues his termination doesn't qualify because he was replaced by two younger employees (Doc. 23 at 25). True, "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes*, 896 F.2d at 1465. However, a terminated employee is not considered "replaced" if "another employee is assigned to perform the [the former employee's] duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* That's what happened here. The

City never hired new employees to take over Brebberman's duties. Rather, his duties were spread among existing employees (Doc. 24-2 at ¶ 10). *See also Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir. 1980) (holding plaintiff was not "replaced" where his former duties were assumed by another employee in addition to that employee's prior duties).

Because of the RIF, Brebberman faces a higher burden. "When an employer is forced to reduce its staff for economic reasons, the most common legitimate reason for the discharge is the RIF itself." *Brocklehurst*, 123 F.3d at 896. To prevail, Brebberman must "provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. Next, this Court examines the evidence of Brebberman's qualifications and termination.

*Qualification*

The City argues Brebberman fails on the "qualified" prong (Doc. 26-1 at 16). But this Court already presumes Brebberman was qualified: "In a work force reduction case, unlike a hiring case, the court can assume that all of the employees are qualified to perform their job since they were actually performing it at the time of their discharge." *Payne v. Benteler Auto. Corp.*, 2022 WL 1665330 (6th Cir. 2022) (quoting *Barnes*, 896 F.2d at 1469 n.18).

Setting the RIF aside, the record evidence does not reveal Brebberman was unqualified. Brebberman "must show that [he] was performing at a level which met [the employer's] legitimate expectations." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999). Brebberman worked for the City for nearly 24 years, and there is no evidence of poor performance or qualification issues. The City counters that Brebberman was unqualified because he: (1) admitted to deleting work emails, in violation of public-records policy; (2) had a role in "the City's dumping of sewage into the Maumee River"; and (3) did not return his work iPad (Doc. 26-1

5

at 16). This evidence is flimsy, at best, considering Brebberman's spotless, decades-long record. Moreover, the City neither considered nor addressed any of these newfound justifications at the time Brebberman was fired. Rather, the decision-making process "was based on position" (Doc. 25 at 6). "It wasn't based on people" (*id.*).

### *Age Discrimination*

The Sixth Circuit has modified the last prong in RIF cases, requiring "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Skalka v. Fernald Env't Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1999) (citation omitted). Specifically, Brebberman must show "that age was a factor in eliminating his position or, where some employees are shifted to other positions, that he was qualified for but not given a new position, *and* that the decision not to place him in a new position was motivated by [his] age." *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992) (emphasis added).

Brebberman argues he "is the only person not of retirement age to ultimately be terminated during the alleged reduction in force as everyone else was either retained in their current position or was moved to a different position at the City" (Doc. 28 at 12). But there's a legitimate explanation for each individual employee initially identified for elimination (Doc. 25-3 at 4–5). Some employees, including three lower-level public-service employees, were able to keep their jobs because of space created by resignations and retirements (*id.*). This includes three of the six employees identified for elimination in the Public Service Department. Others, such as police and fire, were retained after union negotiations (Doc. 25 at 7).

Of all the employees identified in the RIF, Brebberman was uniquely situated -- he was the only "Commissioner" similar to the Police Chief and Fire Chief who received a termination letter

6

(Doc. 25-3 at 3). Brebberman offered to be demoted to "city engineer," but admits there was no such position at that time (Doc. 23 at 26). He further admits he could not have moved into one of the open union positions and he fails to articulate an open position for which he was qualified (*see* Doc. 23 at 26–27).

Brebberman argues another avenue: He should have been afforded the opportunity to move to a different position, as opposed to others, due to his seniority in accordance with City Ordinance No. 250-2019 of the City's 2019 Handbook (Doc. 28 at 5). Maybe so. But the City's failure to do so does not establish age discrimination. "The retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case of age discrimination in the reduction in force context." *Thompson v. Fresh Prods. LLC*, 985 F.3d 509, 527 (6th Cir. 2021) (citation omitted).

Brebberman points to *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d 175 (2004). That case held that "an employee could be age-discriminated against even if he was replaced by a person who was within the protected class if the replacement was substantially younger." *Id*. Brebberman asserts he can carry this burden merely by showing the City retained others who were substantially younger than him. Not so. He fails to acknowledge that *Coryell* did not involve a RIF, and therefore the plaintiff faced a lower burden. Moreover, the City did not replace Brebberman with "substantially younger" employees. His former duties were spread among several existing employees, all very close in age to Brebberman at the time -- Patrick Burtch (56), Matthew Miles (53), Andy Glenn (51), and Robert Simon (51) (Docs. 24-2 at ¶ 10; 24-4).

As reflected above, Brebberman fails to provide sufficient evidence for a trier of fact to reasonably find he was singled out for discharge as a result of his age.

*Pretext*

Were Brebberman able to successfully make a prima facia case, he would next need to demonstrate the reasons proffered by the City are mere pretext for age discrimination. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). To do so, he must show that the proffered reasons: (1) have no basis in fact; (2) did not actually motivate the firing; or (3) are insufficient to warrant the challenged conduct. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991).

The City's non-discriminatory reasoning is simple -- the City needed to cut the budget. The Mayor took emergency action, calling for a reduction in the City's workforce in response to COVID-19 (Doc. 23-11 at 2). Decisions to eliminate were made based on the positions -- not the individuals in those positions (Docs. 25 at 6, 26-1 at 8, 25-2). The City decided Brebberman's job duties could be spread among existing employees (Doc. 26-1 at 9–10). And this is exactly what happened -- his duties were spread between several existing employees, each very close to Brebberman's age at the time (Doc. 24-2 at ¶ 10).

Brebberman points out that his last paycheck was significant -- it included all of his accrued vacation at full pay rate, sick time at 50% pay rate, and unemployment compensation -- and that this payment should have only added to the City's financial fears (Doc. 28-1 at 2). He mistakenly asserts his pay did not come from revenue that was expected to decline (*id.*). The City notes Brebberman's pay came from "permissive tax -- revenue adversely affected by the COVID-19 pandemic," and that Brebberman's opinion on the City's financial analysis or COVID-related decisions is irrelevant (Doc. 31 at 6). Brebberman understandably thinks the City made the wrong decision on who should have been terminated. But "[e]ven if some of the defendants' proffered reasons may be considered subjective there is no evidence that these reasons are not the actual

legitimate non-discriminatory reasons." *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009), *aff'd*, 385 F. App'x 486 (6th Cir. 2010).

In a last gasp, Brebberman argues City Council's August 2020 action of rescinding then-upcoming additional layoffs and the Mayor's January 2021 "State of the City" speech contradict the City's given reasons for the May 2020 layoffs. This argument is also unconvincing. At the time he was terminated, there was indeed a legitimate COVID-19 budget emergency. City officials were merely navigating the uncertainty of the pandemic, forecasting financial issues as they went. And the actions of the Mayor and City Council in the months after Brebberman's termination do not reflect any improper motives, much less "that age was the 'but-for' cause" of his termination. *Gross*, 557 U.S. at 176.

## Conclusion

Hit by an unprecedented nationwide shutdown, the City of Maumee opted to reduce its administrative workforce -- as did many cities across the country.

Brebberman fails to show age discrimination or rebut the legitimate reasons for his termination. There are no disputes of material fact, and the City's Motion for Summary Judgment (Doc. 26) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 20, 2023